FILED

DEC 2 0 1999

NANCY MAYER WHIT⋯  ⋯, ⋯⋯
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE )
    COMMISSION )
     )
            Plaintiff, )
     )
        v. )    Civil No. 99-1455
     )           (RCL)
LEWIS ALLEN RIVLIN, )
  et al., )
     )
            Defendants. )
     )

## MEMORANDUM OPINION

This matter comes before the court on the plaintiff's motion to strike certain affirmative defenses of defendant Lewis Allen Rivlin and the defendant Rivlin's motion for leave to file an amended answer. After consideration of the written submissions and oral arguments of the parties and the relevant law, plaintiff's motion will be granted, and defendant's motion will be denied, except leave to file a jury demand will be granted.

## Background

From December 1997 until approximately April 1998, Lewis Allen Rivlin and Edwin Earl Huling III offered and sold at least $6,239,000 worth of securities in a "trading program" to at least four investor groups - Fundacion Perez Pallares, Boaventura Pereira, New World Industries, Inc. and Thunderbird Management Limited Partnership. According to Rivlin, this program, which was to be conducted under the auspices of his client, a Metropolitan of the Greek Orthodox Church in Limassol ("the Bishop"), involved the

1



43

pooling of investors' funds to purchase and resell deeply discounted bank instruments at a profit. Beginning around December 1997, Rivlin spread the word that persons looking to invest in high yield trading programs should contact him. Potential investors learned about the program and were given promotional materials, which often included Rivlin's resume, through various individuals, or "finders." These finders told those who were interested in the program to contact Rivlin.

Once approached by potential investors, Rivlin, along with Huling, a "transactional consultant" at Rivlin's law firm, provided them with details of the program. This included representing to potential investors that their investments would be risk-free and would generate profits ranging from 20% to 100% every ten international banking days. Rivlin and Huling also drafted the investment agreements, which Rivlin then signed on behalf of the Bishop. These investment agreements provided that the investments would be secured either by a bank guarantee or by some other kind of security instrument. The agreements also stated that trades of bank instruments would begin within a specified period of time after the investor's funds were transferred and that the investor's funds would be returned within five international banking days upon request.

However, contrary to the investment agreements, none of the funds were ever secured or used for a trading program. Nor were any of the investors' funds returned at their request. Investors lost 100% of their investment in the program. The Commission

2

filed suit on June 8, 1999, against Rivlin, Huling and Velarde, a former partner of Rivlin.  Rivlin filed his answer on July 7, 1999.  On July 27, 1999, the SEC filed a motion to strike some of the affirmative defenses in Rivlin's original answer.  Rivlin did not file an opposition to this motion.  He did, however, file a motion for leave to file an amended answer on October 4, 1999, in order to include in his answer a demand for a jury trial, several new affirmative defenses, and requests for a preliminary injunction and Rule 11 sanctions against the SEC.

Analysis

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, the court may strike from a pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  FED. R. CIV. P. 12(f).  Although motions to strike are not generally favored, such a motion "should be granted where it is clear that the affirmative defense is irrelevant and frivolous and its removal from the case would avoid wasting unnecessary time and money litigating the invalid defense."  SEC v. Gulf & Western Indus., 502 F. Supp. 343, 348 (D.D.C.1980).  Motions seeking leave to amend a pleading, on the other hand are generally granted pursuant to Rule 15(a), which provides that such leave "shall be freely given when justice so requires."  FED. R. CIV. P. 15(a).  However, motions for leave to amend should be denied when "there is a sufficient reason, such as `undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by [previous]

amendments . . . [or] futility of amendment.'" <u>Firestone v. Firestone</u>, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)). An amendment is deemed futile when it would not survive a motion to dismiss. <u>See</u> <u>Mittleman v. United States</u>, 997 F. Supp. 1, 10 (D.D.C. 1998), <u>aff'd</u>, 371 U.S. App. LEXIS 28527, 28549 (D.C. Cir. Oct. 15, 1998) (citing <u>James Madison Ltd. v. Ludwig</u>, 82 F.3d 1085, 1099 (D.C. Cir. 1996), <u>cert.</u> <u>denied</u>, 519 U.S. 1077 (1997)). The SEC contends that some of Rivlin's original affirmative defenses and all of his proposed amendments can not survive even a motion to strike under Federal Rule of Civil Procedure 12(f), and, therefore, those such defenses in the original answer should be stricken and leave to amend should not be granted.

A. Jury Demand

In his proposed amendments, Rivlin first seeks to make a demand for a jury trial. His co-defendant, Edwin Earl Huling III, filed a general demand for a jury trial. Rivlin states that he seeks to make his own demand to protect his right to a jury in the event that the other defendants are released from the case. While it appears that this may not be necessary,[1] it is not futile, as

---

[1]Rule 38(d) provides that once a proper demand for a jury has been made, it cannot be withdrawn without the consent of all of the parties. Fed. R. Civ. P. 38(d); <u>see</u> <u>also</u> <u>Collins v. Government of Virgin Islands</u>, 366 F.2d 279, 284 (3rd Cir, 1966), <u>cert</u>. <u>denied</u>, 386 U.S. 958 (1967) (holding that although the defendant who had demanded the jury trial had been dropped from the action, the remaining defendant still had a right to a jury trial as there was no stipulation by the parties consenting to sit without the jury).

the jury demand would certainly survive a motion to dismiss.  Nor would it cause any delay or prejudice the plaintiff in any manner, considering the fact that a demand for jury trial has already been made in this case.  Therefore, there is no reason that this amendment should be denied.

B. Affirmative Defenses

Rivlin's answer, as amended, contains thirty-nine affirmative defenses, four of which were originally pled and which the SEC now moves to strike and twenty-seven of which Rivlin seeks to add. These defenses can be grouped into several different arguments, which this court now addresses.

1.   The SEC violated Rivlin's Constitutional Due Process Rights.

First, Rivlin argues that the SEC has, through its investigation and the bringing of this suit against him, violated his due process rights.[2]  The Supreme Court has held that "when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used."  Hannah v. Larche, 363 U.S. 420, 442

---

[2]Affirmative defenses 1,2, 9, 11, 12, 19-21, 27, 33-37 and 39 all allege, in various ways, that the SEC violated the defendant's due process either during the process of their investigation or by filing the complaint.  Proposed affirmative defenses 9 and 11, are simply reincarnations of affirmative defenses 5 and 6 in the original answer, which were subjects of the SEC's motion to strike. Most of these defenses consist of general allegations.  Those that allege more specific acts are discussed in greater detail below.

(1959)(upholding the investigatory procedures of the Commission on Civil Rights).  The SEC's investigation clearly does not lead to an adjudication, but rather the filing of an complaint so that the court can adjudicate the matter.  Therefore, defendant is afforded due process rights through the adjudication before this court, and not during the investigation prior to the filing of the civil complaint.  See SEC v. OKC Corp., 474 F. Supp. 1031, 1041 (N.D. Tex. 1979) (holding that the defendant does not have full due process rights until the SEC, pursuant to its investigation, either files a complaint or makes a criminal reference); see also Atlantic Ritchfield Co. v. United States Dep't of Energy, 769 F.2d 771, 787 (D.C. Cir. 1983) (recognizing that due process concerns were raised in the issuance of a remedial order by the Department of Energy because such an issuance was not merely preparatory to some further proceeding).

More specifically, in amended affirmative defenses one, two, twelve, and twenty-eight, Rivlin alleges that the press release issued by the Commission on the day it filed its complaint violated his due process rights.  Rivlin cites no authority nor provides any further support for his position.  The press release at issue is typical of the Commission's practice in its enforcement program to issue a release announcing the filing of each complaint and describing the allegations.  This has been the Commission's practice since 1942, and there have been no cases which state that this practice is a violation of due process.

In fact, this practice is authorized by Section 21(a) of the Securities and Exchange Act.  See Securities and Exchange Act of 1934, 15 U.S.C. § 78u (1999)("The Commission is authorized in its discretion, to publish information concerning any   .  .  . violations" of securities law.); Schmidt v. United States, 198 F.2d 32, 36 (7th Cir. 1952) (upholding dismissal of plaintiff's complaint regarding the SEC's publication of reports of its investigations for failure to state a cause of action because such publication is specifically authorized by the Securities and Exchange Act). Furthermore, a litigation release describing the filing of the complaint "constitutes no adjudication of anything; it is merely a warning to the public." Kukatush Mining Corp. v. SEC, 198 F. Supp. 508, 510, aff'd, 309 F.2d 647 (D.C. Cir. 1962).   Therefore, Rivlin's due process rights were not violated by the SEC's litigation release in this case, and his defenses to that effect lack merit and, therefore amending his answer to raise these defenses would be futile.

Rivlin also specifically alleges, in his twenty-seventh amended affirmative defense, that the SEC violated his due process rights because he was never notified of the time and place of depositions taken by the SEC or allowed to cross-examine the witnesses during the SEC's investigation. However, the Commission is not required to give Rivlin any such notice or provide him any opportunity to cross-examine witnesses during its investigation. The Supreme Court, in SEC v. Jerry T. O'Brien, Inc., 467 U.S. 735, 751 (1984), held that the target of an SEC investigation was not

entitled to notice of the issuance of subpoenas to third parties. The Court reasoned that "the imposition of a notice requirement on the SEC would substantially increase the ability of persons who have something to hide to impede legitimate investigations by the Commission." Id. at 750. Accordingly, the Court declined to curtail the Commission's discretion to determine when notice would be appropriate and when it would not. Id. at 751. Therefore, Rivlin's proposed defense regarding lack his lack of notice of depositions taken during the SEC's investigation is also without futile.

Rivlin further argues, in his thirty-fourth affirmative defense if amended, that his due process rights were violated because the SEC has not produced its delegation orders. Once again, Rivlin cites no authority for this proposition - most likely because such authority does not exist. The law presumes the regularity of official agency actions such as the filing of this enforcement action. See Louisiana Ass'n of Indep. Producers and Royalty Owners v. Federal Energy Regulatory Comm'n, 958 F.2d 1101, 1111 (D.C. Cir. 1992) (stating that the "sheer multiplication of innuendo" cannot "overcome the strong presumption of agency regularity"). The SEC clearly has authority to investigate possible violations of securities law. Given that Rivlin has not provided any support for his belief that his investigators were

acting outside this scope of authority, this affirmative defense has no merit.[3]

2.    Mistake of law defense.

Rivlin next contends, in his eighth proposed affirmative defense, that he made a reasonable mistake of law.  This fact, however, even if true, provides him no defense.  The general rule is that ignorance or a mistake of the law is no defense.  See United States  v. O' Hagan, 139 F.3d 641, 647 (1998).  In O'Hagan, the Supreme Court held that a defendant had no mistake of law defense to a conviction for willfully violating Rule 10b-5 of the Securities Exchange Act.  Id.  In so holding, the Court relied on the fact that the statute provided that "lack of knowledge of a rule or regulation is an affirmative defense to imprisonment, rather than conviction."  Id.  Clearly then there is also no mistake of law defense in this case, where only civil remedies are being sought.

3.    Laches, Estoppel, Waiver, and Unclean Hands

Next, Rivlin pleads several affirmative defenses which allege that the SEC is barred from bringing the current action by laches, estoppel, waiver, and the doctrine of unclean hands.  None of these doctrines, however, are applicable in this case.  "To succeed with a defense of laches, the Court must find that the plaintiff delayed unreasonably and inexcusably in commencing the action and that the defendant suffered prejudice as a result."  SEC v. McCaskey, 56 F.

---

[3]The defendant also seeks a preliminary injunction against the SEC until such time that they produce their "delegation orders." This request is denied for the reasons just stated.

Supp.2d 323, 327 (S.D.N.Y. 1999).[4]  Where all claims are brought within the statute of limitations, the court presumes the action was commenced without unreasonable delay.  Id.  In this case, the complaint was filed within two years of the conduct at issue.  The only statute of limitations applicable to this case - 28 U.S.C. § 2462, which covers the SEC's civil money penalty claims - is five years.   Therefore, defendant's claim that the SEC is barred by laches must fail.

Plaintiff next asserts in his tenth, seventeenth, eighteenth[5], twenty-ninth, and thirtieth proposed defenses, that the SEC is barred from proceeding  with this action by estoppel and waiver. "[I]t is well settled that the Government may not be estopped on the same terms as any other litigant." Heckler v. Community Health Servs., Inc., 467 U.S. 51, 60 (1984).  Estoppel may be applied against the government only when the defendant has proved the government's conduct to be egregious and resulting in prejudice of "a constitutional magnitude."  McCaskey, 56 F. Supp.2d at 326 (striking equitable estoppel defense asserted against the SEC). More specifically, the Second Circuit held in SEC v. Culpepper, 270

---

[4]It is questionable whether or not laches can even be applied at all to the SEC.  See McCaskey, 56 F. Supp. at 326 (stating that the well-settled principle in the Second Circuit is that laches is not available in an SEC action seeking injunctive relief); Gulf & Western Indus., 502 F. Supp. at 348 (Laches "cannot be applied to a government agency working in the public interest.") However, this court need not reach that issue since the defendant's claim in this case clearly lacks any factual support.

[5]The seventeenth and eighteen affirmative defenses of Rivlin's proposed amended answer were included in his original answer and were the subject of the SEC's motion to strike.

F.2d 241, 248 (2nd Cir. 1959), that the estoppel can not be raised at all in SEC enforcement actions, stating "the Commission may not waive the requirements of an act of Congress nor may the doctrine of estoppel be invoked against the Commission."  Therefore, Rivlin's affirmative defenses based on estoppel and waiver are without merit.

Rivlin also argues in his second, tenth and thirty-second defenses, that the SEC is barred based on the doctrine of unclean hands.  However, the doctrine of unclean hands may not be invoked against the SEC.  See Gulf & Western Indus., 502 F. Supp. at 348 (striking an "unclean hands" defense in an SEC enforcement action stating that the doctrine of unclean hands "may not be invoked against a governmental agency . . . attempting to enforce a congressional mandate in the public interest").  Therefore, these defenses are again clearly without merit.

4.    Unverified Complaint

Rivlin also complains, in his proposed affirmative defenses eleven, twenty-four, and twenty-five, that the complaint filed by the SEC was unverified.  However, "[v]erification is now the exception rather than the rule in federal practice."  5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1339 (1990). Under Rule 11, pleadings, motions, and other papers need not be verified except when "specifically provided by rule or statute." FED. R. CIV. P. 11.  Rivlin cites no such rule or statute, and one does not exist.  See id. (listing the federal rules and statutes that require verification).  Furthermore, "[t]he law is well

settled that any objection to a failure to comply with a verification requirement must be raised immediately or not at all." Id. Finally, even if verification was required, the SEC's failure to comply would not render its complaint fatally defective. See id. The complaint would still serve to commence the action and toll the statute of limitations, and the SEC would simply be allowed to verify its complaint under Rule 15. See id. Therefore, Rivlin's assertion that the complaint was unverified affords him no viable affirmative defense.

5.    Failure to name an essential relief defendant.

In his fourteenth affirmative defense, Rivlin asserts that the plaintiff has failed to name an essential relief defendant. Once again, Rivlin fails to provide any support for his contention that this defendant is indispensable. Nor does he name the defendant that the SEC has allegedly omitted. Nevertheless, it is clear that the defendant would not be an indispensable party.

A relief defendant is a person who is not accused of wrongdoing, but who has received ill-gotten funds to which he or she has no legitimate claim. See SEC v. Cavanagh, 155 F.3d 129, 136 (2nd Cir. 1998). Therefore, the only potential relevance of relief defendants to Rivlin would be to serve as possible additional sources of funds the Commission is seeking. It is well settled, however, that in cases involving joint tortfeasors who are jointly and severally liable, those defendants who are left out of the suit are not indispensable parties. See Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Ltd., 647 F.2d 200, 207-08

12

(D.C. Cir. 1981) (stating that the district court had overlooked the well-settled rule that joint tortfeasors are not indispensable and had contradicted the recognized philosophy of Rule 19 to avoid dismissal when possible). Therefore, defendant's assertion, even if true, provides him no relief.

      6.   Other proposed affirmative defenses.

Rivlin's remaining proposed affirmative defenses are equally without merit. His proposed twenty-fourth and twenty-fifth defenses, which pertain to the SEC's motion for a preliminary injunction and which consist of arguments already incorporated into Rivlin's opposition to that motion, are mooted by this court's order granting the SEC's motion for a preliminary injunction. See SEC v. Rivlin, Civ. No. 99-1455, Memorandum Opinion (D.D.C. December 10, 1999). In the remaining affirmative defenses, Rivlin asserts that the SEC has failed to provide sufficient evidence for it claims. These "affirmative defenses" simply reiterate individual arguments that the defendant has already made, and may continue to make, in this action. In fact, they do not constitute affirmative defenses at all. Rather, Rivlin has already made these arguments by his denial in his original answer of the allegations in the SEC's complaint. Therefore, these defenses provide Rivlin no additional relief.

In summary, none of Rivlin's proposed new affirmative defenses has merit. Similarly, those affirmative defenses that were the target of the SEC's motion to strike are frivolous and irrelevant. Therefore, Rivlin need not be granted leave to add these defenses,

and such defenses that were previously included in Rivlin's original answer should be stricken.

C. Rule 11 Sanctions

Finally, Rivlin wants to amend his answer in order to seek Rule 11 sanctions. His request, however, is legally insufficient. Federal Rule of Civil Procedure 11(c) specifically provides that where Rule 11 sanctions are initiated by a party, the motion must be made "separately from other motions or requests . . . ." Rivlin's request, however, was added to the end of his proposed amended answer. Therefore, it must be denied. See generally 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE §1337 (1990) (citing cases in which failure to comply with the separate-filing requirement resulted in denial of Rule 11 motion).

Conclusion

For the reasons given above, the plaintiff's motion to strike certain affirmative defenses will be GRANTED. The defendant's motion for leave to file an amended answer will be GRANTED to include a demand for a jury trial. In all other respects, defendant's motion will be DENIED. A separate order shall issue this date.

Royce C. Lamberth
United States District Judge

Date: 12-20-99

14